Justice Sotomayor
delivered the opinion of the Court.
Congress enacted the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA or Act) to cor *232 rect perceived abuses of the bankruptcy system. Among the reform measures the Act implemented are a number of provisions that regulate the conduct of “debt relief agencies]” — i. e., professionals who provide bankruptcy assistance to consumer debtors. See 11 U. S. C. §§ 101(3), (12A). These consolidated cases present the threshold question whether attorneys are debt relief agencies when they provide qualifying services. Because we agree with the Court of Appeals that they are, we must also consider whether the Act’s provisions governing debt relief agencies’ advice to clients, § 526(a)(4), and requiring them to make certain disclosures in their advertisements, §§ 528(a) and (b)(2), violate the First Amendment rights of attorneys. Concluding that the Court of Appeals construed § 526(a)(4) too expansively, we reverse its judgment that the provision is unconstitutionally overbroad. Like the Court of Appeals, we uphold §528’s disclosure requirements as applied in these consolidated cases.
I
In order to improve bankruptcy law and practice, Congress enacted through the BAPCPA a number of provisions directed at the conduct of bankruptcy professionals. Some of these measures apply to the broad class of bankruptcy professionals termed “debt relief agencies]. ” That category includes, with limited exceptions, “any person who provides any bankruptcy assistance to an assisted person in return for ... payment... , or who is a bankruptcy petition preparer.” § 101(12A).[1] “Bankruptcy assistance” refers to goods or ser *233 vices “provided to an assisted person with the express or implied purpose of providing information, advice, counsel, document preparation, or filing, or attendance at a creditors’ meeting or appearing in a case or proceeding on behalf of another or providing legal representation with respect to a case or proceeding” in bankruptcy. §101(4A). An “assisted person” is someone with limited nonexempt property whose debts consist primarily of consumer debts. § 101(3). The BAPCPA subjects debt relief agencies to a number of restrictions and requirements, as set forth in §§526,527, and 528. As relevant here, § 526(a) establishes several rules of professional conduct for persons qualifying as debt relief agencies. Among them, § 526(a)(4) states that a debt relief agency shall not “advise an assisted person ... to incur more debt in contemplation of such person filing a case under this title or to pay an attorney or bankruptcy petition preparer fee or charge for services performed as part of preparing for or representing a debtor in a case under this title.”
Section 528 requires qualifying professionals to include certain disclosures in their advertisements. Subsection (a) provides that debt relief agencies must “clearly and conspicuously disclose in any advertisement of bankruptcy assistance services or of the benefits of bankruptcy directed to the general public .. . that the services or benefits are with respect to bankruptcy relief under this title.” § 528(a)(3). It also requires them to include the following, “or a substantially similar statement”: “We are a debt relief agency. We help people file for bankruptcy relief under the Bankruptcy Code.” § 528(a)(4). Subsection (b) requires essentially the same disclosures in advertisements “indicating that the debt relief agency provides assistance with respect to credit defaults, mortgage foreclosures, eviction proceedings, excessive debt, debt collection pressure, or inability to pay any consumer debt.” § 528(b)(2). Debt relief agencies advertising such services must disclose “that the assistance may involve bankruptcy relief,” § 528(b)(2)(A), and must *234 identify themselves as “debt relief agenc[ies]” as required by § 528(a)(4), see § 528(b)(2)(B).
II
The plaintiffs in this litigation — the law firm Milavetz, Gallop & Milavetz, P. A.; the firm’s president, Robert J. Milavetz; a bankruptcy attorney at the firm, Barbara Nilva Nevin; and two of the firm’s clients (collectively Milavetz) — filed a preenforcement suit in Federal District Court seeking declaratory relief with respect to the Act’s debt-relief-agency provisions. Milavetz asked the court to hold that it is not bound by these provisions and thus may freely advise clients to incur additional debt and need not identify itself as a debt relief agency in its advertisements.
Milavetz first argued that attorneys are not “debt relief agenc[ies]” as that term is used in the BAPCPA. In the alternative, Milavetz sought a judgment that §§ 526(a)(4) and 528(a)(4) and (b)(2) are unconstitutional as applied to attorneys. The District Court agreed with Milavetz that the term “debt relief agency” does not include attorneys, App. to Pet. for Cert. in No. 08-1119, p. A-15, but only after finding that §§ 526 and 528 — provisions expressly applicable only to debt relief agencies — are unconstitutional as applied to this class of professionals.
The Court of Appeals for the Eighth Circuit affirmed in part and reversed in part. 541 F. 3d 785 (2008). Relying on the Act’s plain language, the court unanimously rejected the District Court’s conclusion that attorneys are not “debt relief agenc[ies]” within the meaning of the Act. The Court of Appeals also parted ways with the District Court concerning the constitutionality of § 528. Concluding that the disclosures are intended to prevent consumer deception and are “reasonably related” to that interest, the court upheld the application of §528’s disclosure requirements to attorneys. Id., at 796-797 (citing Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U. S. 626, 651 (1985)).
*235 A majority of the Eighth Circuit panel, however, agreed with the District Court that § 526(a)(4) is invalid. Determining that § 526(a)(4) “broadly prohibits a debt relief agency from advising an assisted person ... to incur any additional debt when the assisted person is contemplating bankruptcy,” even when that advice constitutes prudent prebankruptcy planning not intended to abuse the bankruptcy laws, 541 F. 3d, at 793, the majority held that § 526(a)(4) could not withstand either strict or intermediate scrutiny. In dissent, Judge Colloton argued that § 526(a)(4) should be read narrowly to prevent only advice to abuse the bankruptcy system, noting that this construction would avoid most constitutional difficulties. See id., at 799 (opinion concurring in part and dissenting in part).
In light of a conflict among the Courts of Appeals,[2] we granted certiorari to resolve the question of § 526(a)(4)’s scope. 556 U. S. 1281 (2009). We also agreed to consider the threshold question whether attorneys who provide bankruptcy assistance to assisted persons are “debt relief agencies]” within the meaning of §101(12A) and the related question whether §528’s disclosure requirements are constitutional.
III
A
We first consider whether the term “debt relief agency” includes attorneys. If it does not, we need not reach the other questions presented, as §§526 and 528 govern only the conduct of debt relief agencies, and Milavetz challenges the validity of those provisions based on their application to attorneys. The Government contends that “debt relief *236 agency” plainly includes attorneys, while Milavetz urges that it does not. We conclude that the Government has the better view.
As already noted, a debt relief agency is “any person who provides any bankruptcy assistance to an assisted person” in return for payment. §101(12A). By definition, “bankruptcy assistance” includes several services commonly performed by attorneys. Indeed, some forms of bankruptcy assistance, including the “provision of] legal representation with respect to a case or proceeding,” § 101(4A), may be provided only by attorneys. See § 110(e)(2) (prohibiting bankruptcy petition preparers from providing legal advice). Moreover, in enumerating specific exceptions to the definition of debt relief agency, Congress gave no indication that it intended to exclude attorneys. See §§ 101(12A)(A)-(E). Thus, as the Government contends, the statutory text clearly indicates that attorneys are debt relief agencies when they provide qualifying services to assisted persons.[3]
In advocating a narrower understanding of that term, Milavetz relies heavily on the fact that § 101(12A) does not expressly include attorneys. That omission stands in contrast, it argues, to the provision’s explicit inclusion of “bankruptcy petition preparer[s]” — a category of professionals that excludes attorneys and their staff, see § 110(a)(1). But Mila *237 vetz does not contend, nor could it credibly, that only professionals expressly included in the definition are debt relief agencies. On that reading, no professional other than a bankruptcy petition preparer would qualify — an implausible reading given that the statute defines “debt relief agency” as “any person who provides any bankruptcy assistance to an assisted person ... or who is a bankruptcy petition preparer.” §101(12A) (emphasis added). The provision’s silence regarding attorneys thus avails Milavetz little. Cf. Heintz v. Jenkins, 514 U. S. 291, 294 (1995) (holding that “debt collector” as used in the Fair Debt Collection Practices Act, 15 U. S. C. § 1692a(6), includes attorneys notwithstanding the definition’s lack of an express reference to lawyers or litigation).
Milavetz’s other arguments for excluding attorneys similarly fail to persuade us to disregard the statute’s plain language. Milavetz contends that 11 U. S. C. § 526(d)(2)’s instruction that §§ 526, 527, and 528 should not “be deemed to limit or curtail” States’ authority to “determine and enforce qualifications for the practice of law” counsels against reading “debt relief agency” to include attorneys, as the surest way to protect the States’ role in regulating the legal profession is to make the BAPCPA’s professional conduct rules inapplicable to lawyers. We find that § 526(d)(2) supports the opposite conclusion, as Congress would have had no reason to enact that provision if the debt-relief-agency provisions did not apply to attorneys. Milavetz’s broader claim that reading §101(12A) to include attorneys impermissibly trenches on an area of traditional state regulation also lacks merit. Congress and the bankruptcy courts have long overseen aspects of attorney conduct in this area of substantial federal concern. See, e. g., Conrad, Rubin & Lesser v. Pender, 289 U. S. 472, 477-479 (1933) (finding broad authorization in former § 96(d) (1934 ed.) (repealed 1978) for courts to examine the reasonableness of a debtor’s prepetition attorney’s fees).
*238 Milavetz next argues that § 101(12A)’s exception for any “officer, director, employee, or agent of a person who provides” bankruptcy assistance is revealing for its failure to include “partners.” § 101(12A)(A). In light of that omission, it contends, treating attorneys as debt relief agencies will obligate entire law firms to comply with §§526, 527, and 528 based on the conduct of a single partner, while the agents and employees of debt relief agencies not typically organized as partnerships are shielded from those requirements. Given that the partnership structure is not unique to law firms, however, it is unclear why the exclusion would be revealing of Congress’ intent only with respect to attorneys. In any event, partnerships are themselves “person[s]” under the BAPCPA, see §101(41), and can qualify as “debt relief agencies]” when they meet the criteria set forth in §101(12A). Moreover, a partnership’s employees and agents are exempted from § 101(12A) in the same way as the employees and agents of other organizations. To the extent that partners may be subject to the debt-relief-agency provisions by association, that result is consistent with the joint responsibilities that typically flow from the partnership structure, cf. Strang v. Bradner, 114 U. S. 555, 561 (1885). Accordingly, we decline to attribute the significance Milavetz suggests to § 101(12A)(A)’s failure to include partners among the exempted actors.[4]
*239 All else failing, Milavetz urges that the canon of constitutional avoidance requires us to read “debt relief agency” to exclude attorneys in order to forestall serious doubts as to the validity of §§526 and 528. The avoidance canon, however, “is a tool for choosing between competing plausible interpretations of a statutory text.” Clark v. Martinez, 543 U. S. 371, 381 (2005). In applying that tool, we will consider only those constructions of a statute that are “ ‘fairly possible.’ ” United States v. Security Industrial Bank, 459 U. S. 70, 78 (1982). For the reasons already discussed, the text and statutory context of §101(12A) foreclose a reading of “debt relief agency” that excludes attorneys. Accordingly, we hold that attorneys who provide bankruptcy assistance to assisted persons are debt relief agencies within the meaning of the BAPCPA.
B
Having concluded that attorneys are debt relief agencies when they provide qualifying services, we next address the scope and validity of § 526(a)(4). Characterizing the statute as a broad, content-based restriction on attorney-client communications that is not adequately tailored to constrain only speech the Government has a substantial interest in restricting, the Eighth Circuit found the rule substantially over-broad. 541 F. 3d, at 793-794, and n. 10. For the reasons that follow, we reject that conclusion.
Section 526(a)(4) prohibits a debt relief agency from “advis[ing] an assisted person” either “to incur more debt in contemplation of” filing for bankruptcy “or to pay an attorney or bankruptcy petition preparer fee or charge for services” performed in preparation for filing. Only the first of these prohibitions is at issue. In debating the correctness of the Court of Appeals’ decision, the parties first dispute *240 the provision’s scope. The Court of Appeals concluded that “§ 526(a)(4) broadly prohibits a debt relief agency from advising an assisted person ... to incur any additional debt when the assisted person is contemplating bankruptcy.” Id., at 793. Under that reading, an attorney is prohibited from providing all manner of “beneficial advice — even if the advice could help the assisted person avoid filing for bankruptcy altogether.” Ibid.
Agreeing with the Court of Appeals, Milavetz contends that § 526(a)(4) prohibits a debt relief agency from advising a client to incur any new debt while considering whether to file for bankruptcy. Construing the provision more broadly still, Milavetz contends that § 526(a)(4) forbids not only affirmative advice but also any discussion of the advantages, disadvantages, or legality of incurring more debt. Like the panel majority’s, Milavetz’s reading rests primarily on its view that the ordinary meaning of the phrase “in contemplation of” bankruptcy encompasses any advice given to a debtor with the awareness that he might soon file for bankruptcy, even if the advice seeks to obviate the need to file. Milavetz also maintains that if § 526(a)(4) were construed more narrowly, as urged by the Government and the dissent below, it would be so vague as to inevitably chill some protected speech.
The Government continues to advocate a narrower construction of the statute, urging that Milavetz’s reading is untenable and that its vagueness concerns are misplaced. The Government contends that § 526(a)(4)’s restriction on advice to incur more debt “in contemplation of” bankruptcy is most naturally read to forbid only advice to undertake actions to abuse the bankruptcy system. Focusing first on the provision’s text, the Government points to sources indicating that the phrase “in contemplation of” bankruptcy has long been, and continues to be, associated with abusive conduct. For instance, Black’s Law Dictionary 336 (8th ed. 2004) (hereinafter Black’s) defines “contemplation of bankruptcy” as “[t]he *241 thought of declaring bankruptcy because of the inability to continue current financial operations, often coupled with action designed to thwart the distribution of assets in a bankruptcy proceeding.” Use of the phrase by Members of Congress illustrates that traditional coupling. See, e. g., S. Rep. No. 98-65, p. 9 (1983) (discussing the practice of “'loading up’ [on debt] in contemplation of bankruptcy”); Report of the Commission on the Bankruptcy Laws of the United States, H. R. Doe. No. 93-137, pt. I, p. 11 (1973) (“[T]he most serious abuse of consumer bankruptcy is the number of instances in which individuals have purchased a sizable quantity of goods and services on credit on the eve of bankruptcy in contemplation of obtaining a discharge”). The Government also points to early American and English judicial decisions to corroborate its contention that “in contemplation of” bankruptcy signifies abusive conduct. See, e. g., In re Pearce, 19 F. Cas. 50, 53 (No. 10,873) (D Vt. 1843); Morgan v. Brundrett, 5 B. & Ad. 288, 296-297, 110 Eng. Rep. 798, 801 (K. B. 1833) (Parke, J.).
To bolster its textual claim, the Government relies on § 526(a)(4)’s immediate context. According to the Government, the other three subsections of § 526(a) are designed to protect debtors from abusive practices by debt relief agencies: Section 526(a)(1) requires debt relief agencies to perform all promised services; § 526(a)(2) prohibits them from making or advising debtors to make false or misleading statements in bankruptcy; and § 526(a)(3) prohibits them from misleading debtors regarding the costs or benefits of bankruptcy. When § 526(a)(4) is read in context of these debtor-protective provisions, the Government argues, construing it to prevent debt relief agencies from giving advice that is beneficial to both debtors and their creditors seems particularly nonsensical.
Finally, the Government contends that the BAPCPA’s remedies for violations of § 526(a)(4) similarly corroborate its narrow reading. Section 526(c) provides remedies for a debt *242 relief agency’s violation of § 526, § 527, or § 528. Among the actions authorized, a debtor may sue the attorney for remittal of fees, actual damages, and reasonable attorney’s fees and costs; a state attorney general may sue for a resident’s actual damages; and a court finding intentional abuse may impose an appropriate civil penalty. § 526(c). The Government also relies on the Fifth Circuit’s decision in Hersh v. United States ex rel. Mukasey, 553 F. 3d 743 (2008), and Judge Colloton’s dissent below for the observation that “Congress’s emphasis on actual damages for violations of section 526(a)(4) strongly suggests that Congress viewed that section as aimed at advice to debtors which if followed would have a significant risk of harming the debtor.” Id., at 760; see 541 F. 3d, at 800 (opinion concurring in part and dissenting in part). By contrast, “legal and appropriate advice that would be protected by the First Amendment, yet prohibited by a broad reading of § 526(a)(4), should cause no damage at all.” Ibid.; see Hersh, 553 F. 3d, at 760.
Milavetz contends that the Government’s sources actually undermine its claim that the phrase “in contemplation of” bankruptcy necessarily refers to abusive conduct. Specifically, Milavetz argues that these authorities illustrate that “in contemplation of” bankruptcy is a neutral phrase that only implies abusive conduct when attached to an additional, proscriptive term. As Black's states, the phrase is “often coupled with action designed to thwart the distribution of assets” in bankruptcy, Black’s 336 (emphasis added), but it carries no independent connotation of abuse. In support of that conclusion, Milavetz relies on our decision in Pender, 289 U. S. 472, contending that we construed “in contemplation of” bankruptcy in that case to describe “conduct with a view to a probable bankruptcy filing and nothing more.” Brief for Milavetz 61.
After reviewing these competing claims, we are persuaded that a narrower reading of § 526(a)(4) is sounder, although we do not adopt precisely the view the Government advo *243 cates. The Government’s sources show that the phrase “in contemplation of” bankruptcy has so commonly been associated with abusive conduct that it may readily be understood to prefigure abuse. As used in § 526(a)(4), however, we think the phrase refers to a specific type of misconduct designed to manipulate the protections of the bankruptcy system. In light of our decision in Pender, and in context of other sections of the Code, we conclude that § 526(a)(4) prohibits a debt relief agency only from advising a debtor to incur more debt because the debtor is filing for bankruptcy, rather than for a valid purpose.
Pender addressed the meaning of former § 96(d), which authorized reexamination of a debtor’s payment of attorney’s fees “in contemplation of the filing of a petition.” Recognizing “ 'the temptation of a failing debtor to deal too liberally with his property in employing counsel to protect him,’ ” 289 U. S., at 478 (quoting In re Wood & Henderson, 210 U. S. 246, 253 (1908)), we read “in contemplation of. . . filing” in that context to require that the portended bankruptcy have “induce[d]” the transfer at issue, 289 U. S., at 477, understanding inducement to engender suspicion of abuse. In so construing the statute, we identified the “controlling question” as “whether the thought of bankruptcy was the impelling cause of the transaction.” Ibid. Given the substantial similarities between §§ 96(d) and 526(a)(4), we think the controlling question under the latter provision is likewise whether the impelling reason for “advis[ing] an assisted person ... to incur more debt” was the prospect of filing for bankruptcy.
To be sure, there are relevant differences between the provision at issue in Pender and the one now under review. Most notably, the inquiry in Pender was as to payments made on the eve of bankruptcy, whereas § 526(a)(4) regards advice to incur additional debts. Consistent with that difference, under § 96(d) a finding that a payment was made “in contemplation of” filing resolved only a threshold inquiry triggering further review of the reasonableness of the pay *244 ment; the finding thus supported an inference of abuse but did not conclusively establish it. By contrast, advice to incur more debt because of bankruptcy, as prohibited by § 526(a)(4), will generally consist of advice to “load up” on debt with the expectation of obtaining its discharge — i. e., conduct that is abusive per se.
The statutory context supports the conclusion that § 526(a)(4)’s prohibition primarily targets this type of abuse. Code provisions predating the BAPCPA already sought to prevent the practice of loading up on debt prior to filing. Section 523(a)(2), for instance, addressed the attendant risk of manipulation by preventing the discharge of debts obtained by false pretenses and making debts for purchases of luxury goods or services presumptively nondischargeable. See §§ 523(a)(2)(A) and (C) (2000 ed.). The BAPCPA increased the risk of such abuse, however, by providing a new mechanism for determining a debtor’s ability to repay. Pursuant to the “means tes[t],” § 707(b)(2)(D) (2006 ed.), a debt- or’s petition for Chapter 7 relief is presumed abusive (and may therefore be dismissed or converted to a structured repayment plan under Chapter 13) if the debtor’s current monthly income exceeds his statutorily allowed expenses, including payments for secured debt, by more than a prescribed amount. See §§ 707(b)(2)(A)(i)-(iv). The test promotes debtor accountability but also enhances incentives to incur additional debt prior to filing, as payments on secured debts offset a debtor’s monthly income under the formula. Other amendments effected by the BAPCPA reflect a concern with this practice. For instance, Congress amended § 523(a)(2) to expand the exceptions to discharge by lowering the threshold amount of new debt a debtor must assume to trigger the presumption of abuse under § 523(a)(2)(C), and it extended the relevant prefiling window. See § 310,119 Stat. 84. In context, § 526(a)(4) is best understood to provide an additional safeguard against the practice of loading up on debt prior to filing.
*245 The Government’s contextual arguments provide additional support for the view that § 526(a)(4) was meant to prevent this type of conduct. The companion rules of professional conduct in §§ 526(á)(l)-(3) and the remedies for their violation in § 526(c) indicate that Congress was concerned with actions that threaten to harm debtors or creditors. Unlike the reasonable financial advice the Eighth Circuit’s broad reading would proscribe, advice to incur more debt because of bankruptcy presents a substantial risk of injury to both debtors and creditors. See Hersh, 553 F. 3d, at 760-761. Specifically, the incurrence of such debt stands to harm a debtor if his prepetition conduct leads a court to hold his debts nondischargeable, see § 523(a)(2), convert his case to another chapter, or dismiss it altogether, see § 707(b), thereby defeating his effort to obtain bankruptcy relief. If a debt, although manipulatively incurred, is not timely identified as abusive and therefore is discharged, creditors will suffer harm as a result of the discharge and the consequent dilution of the bankruptcy estate. By contrast, the prudent advice that the Eighth Circuit’s view of the statute forbids would likely benefit both debtors and creditors and at the very least should cause no harm. See id., at 760; 541 F. 3d, at 800 (Colloton, J., concurring in part and dissenting in part). For all of these reasons, we conclude that § 526(a)(4) prohibits a debt relief agency only from advising an assisted person to incur more debt when the impelling reason for the advice is the anticipation of bankruptcy.
That “[njo other solution yields as sensible a” result further persuades us of the correctness of this narrow reading. United States v. Granderson, 511 U. S. 39, 55 (1994). It would make scant sense to prevent attorneys and other debt relief agencies from advising individuals thinking of filing for bankruptcy about options that would be beneficial to both those individuals and their creditors. That construction serves none of the purposes of the Bankruptcy Code or the amendments enacted through the BAPCPA. Milavetz itself *246 acknowledges that its expansive view of § 526(a)(4) would produce absurd results; that is one of its bases for arguing that “debt relief agency” should be construed to exclude attorneys. Because the language and context of § 526(a)(4) evidence a more targeted purpose, we can avoid the absurdity of which Milavetz complains without reaching the result it advocates.
For the same reason, we reject Milavetz’s suggestion that § 526(a)(4) broadly prohibits debt relief agencies from discussing covered subjects instead of merely proscribing affirmative advice to undertake a particular action. Section 526(a)(4) by its terms prevents debt relief agencies only from “advisjmg]” assisted persons “to incur” more debt. Covered professionals remain free to “tal[k] fully and candidly about the incurrence of debt in contemplation of filing a bankruptcy case.” Brief for Milavetz 73. Section 526(a)(4) requires professionals only to avoid instructing or encouraging assisted persons to take on more debt in that circumstance. Cf. ABA Model Rule of Professional Conduct 1.2(d) (2009) (“A lawyer shall not counsel a client to engage, or assist a client, in conduct that the lawyer knows is criminal or fraudulent, but a lawyer may discuss the legal consequences of any proposed course of conduct with a client and may counsel or assist a client to make a good faith effort to determine the validity, scope, meaning or application of the law”). Even if the statute were not clear in this regard, we would reach the same conclusion about its scope because the inhibition of frank discussion serves no conceivable purpose within the statutory scheme. Cf. Johnson v. United States, 529 U. S. 694, 706, n. 9 (2000).[5]
*247 Finally, we reject Milavetz’s contention that, narrowly construed, § 526(a)(4) is impermissibly vague. Milavetz urges that the concept of abusive prefiling conduct is too indefinite to withstand constitutional scrutiny and that uncertainty regarding the scope of the prohibition will chill protected speech. We disagree.
Under our reading of the statute, of course, the prohibited advice is not defined in terms of abusive prefiling conduct but rather the incurrence of additional debt when the impelling reason is the anticipation of bankruptcy. Even if the test depended upon the notion of abuse, however, Milavetz’s claim would be fatally undermined by other provisions of the Bankruptcy Code, to which that concept is no stranger. As discussed above, the Code authorizes a bankruptcy court to decline to discharge fraudulent debts, see § 523(a)(2), or to dismiss a case or convert it to a case under another chapter if it finds that granting relief would constitute abuse, see § 707(b)(1). Attorneys and other professionals who give debtors bankruptcy advice must know of these provisions and their consequences for a debtor who in bad faith incurs additional debt prior to filing. Indeed, § 707(b)(4)(C) states that an attorney’s signature on bankruptcy filings “shall constitute a certification that the attorney has” determined that the filing “does not constitute an abuse under [§ 707(b)(1)].” Against this backdrop, it is hard to see how a rule that narrowly prohibits an attorney from affirmatively advising a client to commit this type of abusive prefiling conduct could chill attorney speech or inhibit the attorney-client relationship. Our construction of § 526(a)(4) to prevent only advice principally motivated by the prospect of bankruptcy further ensures that professionals cannot unknowingly run afoul of *248 its proscription.[6] Because the scope of the prohibition is adequately defined, both on its own terms and by reference to the Code’s other provisions, we reject Milavetz’s vagueness claim.
As the foregoing shows, the language of the statute, together with other evidence of its purpose, makes this narrow reading of § 526(a)(4) not merely a plausible interpretation but the more natural one. Accordingly, we reject the Eighth Circuit’s conclusion and hold that a debt relief agency violates § 526(a)(4) only when the impetus of the advice to incur more debt is the expectation of filing for bankruptcy and obtaining the attendant relief. Because our reading of the statute supplies a sufficient ground for reversing the Court of Appeals’ decision, and because Milavetz challenges the constitutionality of the statute, as narrowed, only on vagueness grounds, we need not further consider whether the statute so construed withstands First Amendment scrutiny.
C
Finally, we address the validity of § 528’s challenged disclosure requirements. Our first task in resolving this question is to determine the contours of Milavetz's claim. Although *249 the nature of its challenge is not entirely clear from the briefing or decisions below, counsel for Milavetz insisted at oral argument that this is “not a facial challenge; it’s an as-applied challenge.” Tr. of Oral Árg. 26. We will approach the question consistent with Milavetz’s characterization.[7]
We next consider the standard of scrutiny applicable to § 528’s disclosure requirements. The parties agree, as do we, that the challenged provisions regulate only commercial speech. Milavetz contends that our decision in Central Hudson Gas & Elec. Corp. v. Public Serv. Comm’n of N. Y. 447 U. S. 557 (1980), supplies the proper standard for reviewing these requirements. The Court in that case held that restrictions on nonmisleading commercial speech regarding lawful activity must withstand intermediate scrutiny — that is, they must “directly advanc[e]” a substantial governmental interest and be “n[o] more extensive than is necessary to serve that interest.” Id., at 566. Contesting Milavetz’s premise, the Government maintains that § 528 is directed at misleading commercial speech. For that reason, and because the challenged provisions impose a disclosure requirement rather than an affirmative limitation on speech, the Government contends that the less exacting scrutiny described in Zauderer governs our review. We agree.
Zauderer addressed the validity of a rule of professional conduct that required attorneys who advertised contingency-fee services to disclose in their advertisements that a losing client might still be responsible for certain litigation fees and costs. Noting that First Amendment protection for commercial speech is justified in large part by the information’s value to consumers, the Court concluded that an attorney’s *250 constitutionally protected interest in not providing the required factual information is “minimal.” 471 U. S., at 651. Unjustified or unduly burdensome disclosure requirements offend the First Amendment by chilling protected speech, but “an advertiser’s rights are adequately protected as long as disclosure requirements are reasonably related to the State’s interest in preventing deception of consumers.” Ibid.
The challenged provisions of § 528 share the essential features of the rule at issue in Zauderer. As in that case, §528’s required disclosures are intended to combat the problem of inherently misleading commercial advertisements— specifically, the promise of debt relief without any reference to the possibility of filing for bankruptcy, which has inherent costs. Additionally, the disclosures entail only an accurate statement identifying the advertiser’s legal status and the character of the assistance provided, and they do not prevent debt relief agencies like Milavetz from conveying any additional information.
The same characteristics of §528 that make it analogous to the rule in Zauderer serve to distinguish it from those at issue in In re R. M. J., 455 U. S. 191 (1982), to which the Court applied the intermediate scrutiny of Central Hudson. The ethical rules addressed in R. M. J. prohibited attorneys from advertising their practice areas in terms other than those prescribed by the State Supreme Court and from announcing the courts in which they were admitted to practice. See 455 U. S., at 197-198. Finding that the restricted statements were not inherently misleading and that the State had failed to show that the appellant’s advertisements were themselves likely to mislead consumers, see id., at 205, the Court applied Central Hudson’s intermediate scrutiny and invalidated the restrictions as insufficiently tailored to any substantial state interest, 455 U. S., at 205-206. In so holding, the Court emphasized that States retain authority to regulate inherently misleading advertisements, particularly *251 through disclosure requirements, and it noted that advertisements for professional services pose a special risk of deception, See id., at 203, 207.
Milavetz makes much of the fact that the Government in these consolidated cases has adduced no evidence that its advertisements are misleading. Zauderer forecloses that argument: “When the possibility of deception is as self-evident as it is in this case, we need not require the State to ‘conduct a survey of the ... public before it [may] determine that the [advertisement] had a tendency to mislead.’ ” 471 U. S., at 652-653 (quoting FTC v. Colgate-Palmolive Co., 380 U. S. 374, 391-392 (1965)). Evidence in the congressional record demonstrating a pattern of advertisements that hold out the promise of debt relief without alerting consumers to its potential cost, see 1998 Hearings, pt. Ill, at 86, 90-94, is adequate to establish that the likelihood of deception in these cases “is hardly a speculative one,” 471 U. S., at 652.
Milavetz alternatively argues that the term “debt relief agency” is confusing and misleading and that requiring its inclusion in advertisements cannot be “reasonably related” to the Government’s interest in preventing consumer deception, as Zauderer requires. Id., at 651. This contention amounts to little more than a preference on Milavetz’s part for referring to itself as something other than a “debt relief agency” — e. g., an attorney or a law firm. For several reasons, we conclude that this preference lacks any constitutional basis. First, Milavetz offers no evidence to support its claim that the label is confusing. Because §528 by its terms applies only to debt relief agencies, the disclosures are necessarily accurate to that extent: Only debt relief agencies must identify themselves as such in their advertisements. This statement provides interested observers with pertinent information about the advertiser’s services and client obligations.
Other information that Milavetz must or may include in its advertisements for bankruptcy-assistance services pro *252 vides additional assurance that consumers will not misunderstand the term. The required statement that the advertiser “ ‘help[s] people file for bankruptcy relief’ ” gives meaningful context to the term “debt relief agency.” And Milavetz may further identify itself as a law firm or attorney. Section 528 also gives Milavetz flexibility to tailor the disclosures to its individual circumstances, as long as the resulting statements are “substantially similar” to the statutory examples. §§ 528(a)(4) and (b)(2)(B).
Finally, we reject Milavetz’s argument that §528 is not reasonably related to any governmental interest because it applies equally to attorneys who represent creditors, as Milavetz sometimes does. The required disclosures, Milavetz contends, would be counterfactual and misleading in that context. This claim is premised on an untenable reading of the statute. We think it evident from the definition of “assisted person” — which is stated in terms of the person’s debts, see § 101(3) — and from the text and structure of the debt-relief-agency provisions in §§526, 527, and 528 that those provisions, including §528’s disclosure requirements, govern only professionals who offer bankruptcy-related services to consumer debtors. Section 528 is itself expressly concerned with advertisements pertaining to “bankruptcy assistance services,” “the benefits of bankruptcy,” “excessive debt, debt collection pressure, or inability to pay any consumer debt,” §§ 528(a)(3) and (b)(2). Moreover, like the other debt-relief-agency provisions, that section is codified in a subchapter of the Bankruptcy Code entitled “debtor’s duties and benefits.” 11 U. S. C., ch. 5, subch. II. In context, reading §528 to govern advertisements aimed at creditors would be as anomalous as the result of which Milavetz complains. Once again, we decline Milavetz’s invitation to adopt a view of the statute that is contrary to its plain meaning and would produce an absurd result.
Because § 528’s requirements that Milavetz identify itself as a debt relief agency and include certain information about *253 its bankruptcy-assistance and related services are “reasonably related to the [Government’s] interest in preventing deception of consumers,” Zauderer, 471 U. S., at 651, we uphold those provisions as applied to Milavetz.
IV
For the foregoing reasons, the judgment of the Court of Appeals for the Eighth Circuit is affirmed as to §§101(12A) and 528 and reversed as to § 526(a)(4), and the cases are remanded for further proceedings consistent with this opinion.

It is so ordered.

 Congress excluded from the definition of “debt relief agency” any “officer, director, employee, or agent of a person who provides [bankruptcy] assistance”; any “nonprofit organization that is exempt from taxation under section 501(c)(3) of the Internal Revenue Code of 1986”; “a creditor of [an] assisted person” who is helping that person “to restructure any debt owed ... to the creditor”; “a depository institution”; or “an author, publisher, distributor, or seller of works subject to copyright protection under title 17, when acting in such capacity.” §§ 101(12A)(A)~(E).

 Compare 541 F. 3d 785, 794 (CA8 2008) (case below), with Hersh v. United States ex rel. Mukasey, 553 F. 3d 743, 761, 764 (CA5 2008) (holding that § 526(a)(4) can be narrowly construed to prohibit only advice to abuse or manipulate the bankruptcy system and that, so construed, it is constitutional).

 Although reliance on legislative history is unnecessary in light of the statute’s unambiguous language, we note the support that record provides for the Government’s reading. Statements in a Report of the House Committee on the Judiciary regarding the Act’s purpose indicate concern with abusive practices undertaken by attorneys as well as other bankruptcy professionals. See, e. g., H. R. Rep. No. 109-31, pt. 1, p. 5 (2005) (hereinafter H. R. Rep.). And the legislative record elsewhere documents misconduct by attorneys. See, e. g., Hearings on H. R. 3150 before the Subcommittee on Commercial and Administrative Law of the House Committee on the Judiciary, 105th Cong., 2d Sess., pt. Ill, p. 95 (1998) (hereinafter 1998 Hearings). (While the 1998 Hearings preceded the BAPCPA’s enactment by several years, they form part of the record cited by the 2005 House Report. See H. R. Rep., at 7.)

 Reviving an argument that Milavetz abandoned, amici contend that § 527(b) undermines the Government’s reading of § 101(12A) because it requires a debt relief agency to inform an assisted person of his right to hire an attorney, and it would be nonsensical to require attorneys to provide such notice. See Brief for National Association of Consumer Bankruptcy Attorneys et al. as Amici Curiae 34. This argument fails on its own terms. Even if §101(12A) excluded attorneys, as Milavetz contends, § 527(b) would still produce the result of which its amici complain, as that provision also requires a debt relief agency to inform assisted persons that they “ ‘can get help in some localities from a bankruptcy petition preparer,”’ and there is no question that bankruptcy petition preparers are debt relief agencies and thus subject to that requirement. It is in any *239 event not absurd to require debt relief agencies — whether attorneys or bankruptcy petition preparers — to inform prospective clients of their options for obtaining bankruptcy-assistance services.

 If read as Milavetz advocates, § 526(a)(4) would seriously undermine the attorney-client relationship. Earlier this Term, we acknowledged the importance of the attorney-client privilege as a means of protecting that relationship and fostering robust discussion. See Mohawk Industries, *247 Inc. v. Carpenter, 558 U. S. 100, 108 (2009). Reiterating the significance of such dialogue, we note that § 526(a)(4), as narrowly construed, presents no impediment to “‘full and frank’” discussions. Ibid, (quoting Upjohn Co. v. United States, 449 U. S. 383, 389 (1981)).

 The hypothetical questions Milavetz posits regarding the permissibility of advice to incur debt in certain circumstances, see Brief for Milavetz 48-51, are easily answered by reference to whether the expectation of filing for bankruptcy (and obtaining a discharge) impelled the advice. We emphasize that awareness of the possibility of bankruptcy is insufficient to trigger § 526(a)(4)’s prohibition. Instead, that provision proscribes only advice to incur more debt that is principally motivated by that likelihood. Thus, advice to refinance a mortgage or purchase a reliable car prior to filing because doing so will reduce the debtor’s interest rates or improve his ability to repay is not prohibited, as the promise of enhanced financial prospects, rather than the anticipated filing, is the impelling cause. Advice to incur additional debt to buy groceries, pay medical bills, or make other purchases “reasonably necessary for the support or maintenance of the debtor or a dependent of the debtor,” §523(a)(2)(C)(ii)(II), is similarly permissible.

 In so doing, we note that our ability to evaluate §528's validity as applied to Milavetz is constrained by the lack of a developed record. Because the parties have introduced no exhibits or other evidence to ground our analysis, we are guided in this preenforcement challenge only by Milavetz’s status — i. e., as a law firm or attorney — and its general claims about the nature of its advertisements.