**In re Robert Andrew Michael GREEN, Debtor.**

No. 09–36078.

United States Bankruptcy Court, S.D. Ohio, Western Division, at Dayton.

June 22, 2010.

Jeremy Shane Flannery, Office of the United States Trustee, Columbus, OH, for United States Trustee.

**Decision Determining the Exemption of 11 U.S.C. § 707(b)(2)(D) is Inapplicable to the United States Trustee's Motion to Dismiss Pursuant to 11 U.S.C. § 707(b)(3)(B)**

GUY R. HUMPHREY, United States Bankruptcy Judge.

The issue presented is whether the exemption from "any form of means testing" provided by § 707(b)(2)(D), and particularly as broadened through the National Guard and Reservists Debt Relief Act of 2008, exempts a debtor from a motion to dismiss a Chapter 7 case pursuant to § 707(b)(3)(B) under the totality of circumstances based on the debtor's ability to pay. This issue appears to be one of first impression. For the reasons set forth in this decision, the court determines that the exemption provided by § 707(b)(2)(D) does not exempt a debtor from the provisions of 11 U.S.C. § 707(b)(3) as raised through a motion to dismiss based upon the totality of the circumstances, including the debtor's ability to pay.

On September 29, 2009 the debtor, Robert Andrew Michael Green (the "Debtor"), filed a petition for relief under Chapter 7 of Title 11 of the United States Code (Doc. 1). On February 24, 2010 the United States Trustee (the "UST") filed a motion to dismiss pursuant to 11 U.S.C. § 707(b)(3)(B),[1] arguing the totality of the Debtor's financial circumstances is an abuse of Chapter 7 because the Debtor has the ability to repay a significant portion of his unsecured debt to his creditors (Doc. 31). In response to the UST's motion, the Debtor has taken the position that he is exempt from being dismissed based on an ability to pay argument (Doc. 33). The Debtor argues the National Guard and Reservists Debt Relief Act of 2008 (P.L. No. 110–438) (the "Act") codified in § 707(b)(2)(D) prohibits such a motion.[2] The Debtor posits that pursuing "ability to pay" under § 707(b)(3)(B) as a basis for dismissal constitutes a form of means testing from which he is exempted by the Act. In order to resolve this threshold issue, the court established a briefing schedule (Doc. 36) and the UST and the Debtor filed memoranda on June 4, 2008 (Docs. 38 & 39). The UST filed a response brief on June 18, 2010 (Doc. 40).

The court has jurisdiction over this contested matter pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

An abbreviated history of § 707(b) is necessary to understand the Debtor's position and part of the reason this court ultimately rejects it. Prior to the enactment of the Bankruptcy Abuse Prevention

---

1. Unless otherwise noted, all statutory references are to the Bankruptcy Code of 1978, as amended, 11 U.S.C. §§ 101–1532 (the "Bankruptcy Code"), cited hereinafter in this decision as " § ____."

2. The UST apparently concedes that the Debtor meets the exemption requirements of § 707(b)(2)(D).

and Consumer Protection Act of 2005 ("BAPCPA"), § 707(b) provided that a Chapter 7 could be dismissed for substantial abuse, and a presumption in favor of the debtor that a case was not an abuse existed. Under BAPCPA's revisions to the Bankruptcy Code a case can be dismissed for abuse, rather than "substantial abuse," and the presumption in favor of the debtor is eliminated. Further, for the first time under the Bankruptcy Code, BAPCPA created a comprehensive statutory formula for determining whether a presumption of abuse exists. 11 U.S.C. § 707(b)(2). This presumption can be rebutted by "special circumstances." 11 U.S.C. § 707(b)(2)(B)(i—iv). If the presumption of abuse does not arise or is rebutted, a debtor's case may still be dismissed (or converted to Chapter 13 with the debtor's consent) based on the totality of the debtor's financial circumstances or bad faith. 11 U.S.C. § 707(b)(3). *In re Mestemaker*, 359 B.R. 849, 854–55 (Bankr. N.D.Ohio 2007); *In re Phillips*, 417 B.R. 30, 39 (Bankr.S.D.Ohio 2009).

When Congress created the statutory formula codified in § 707(b)(2), it created an exemption from this statutory formula in § 707(b)(2)(D). It stated that "[s]ubparagraphs (A) through (C) shall not apply, and the court may not dismiss or convert a case based on any form of means testing, if the debtor is a disabled veteran . . . and the indebtedness primarily occurred during a period which he or she was . . . (i) on active duty . . . or (ii) performing a homeland defense activity. . . ." In 2008 the exemption was broadened through enactment of the Act and now reads:

(D) Subparagraphs (A) through (C) shall not apply, and the court may not dismiss or convert a case based on any form of means testing—

(i) if the debtor is a disabled veteran (as defined in section 3741(1) of title 38), and the indebtedness occurred primarily during a period during which he or she was—

(I) on active duty (as defined in section 101(d)(1) of title 10); or

(II) performing a homeland defense activity (as defined in section 901(1) of title 32) or

(ii) with respect to the debtor, while the debtor is—

(I) on, and during the 540–day period beginning immediately after the debtor is released from, a period of active duty (as defined in section 101(d)(1) of title 10) of not less than 90 days; or

(II) performing, and during the 540–day period beginning immediately after the debtor is no longer performing, a homeland defense activity (as defined in section 901(1) of title 32) performed for a period of not less than 90 days;

if after September 11, 2001, the debtor while a member of a reserve component of the Armed Forces or a member of the National Guard, was called to such active duty or performed such homeland defense activity.

11 U.S.C. § 707(b)(2)(D).

The Bankruptcy Code does not define the phrase "any form of means testing" as used in § 707(b)(2)(D). However, its meaning is quite clear in both the original version of § 707(b)(2)(D) and the 2008 amended version. It refers to the statutory formula enacted by BAPCPA and codified in § 707(b)(2). The Conference Report of the House of Representatives Judiciary Committee, the best available legislative history of BAPCPA, explains that the primary purpose of BAPCPA, and the central debate which preceded its becoming law, was whether the Bankruptcy Code, for the first time, should

include "means testing"—a statutory formula for determining if Chapter 7 debtors who could pay back a certain portion of their unsecured debt should have their case dismissed (or converted with the debtor's consent):

> The heart of the bill's consumer bankruptcy reforms consists of the implementation of an income/expense screening mechanism ('needs based bankruptcy relief or means testing') which is intended to ensure that debtors repay creditors the maximum they can afford.

H.R. Rep. 109–31(1) (2005), *reprinted in* 2005 U.S.C.C.A.N. 88, 89. In simplest terms, "means testing" did not exist under the Bankruptcy Code prior to BAPCPA. *See also Phillips,* 417 B.R. at 36 (" 'BAPCPA' " brought a "sea change" to [§ 707(b) ].).

In addition, § 707(b)(2)(D) is a subsection of § 707(b)(2) and its language is not repeated or referenced in § 707(b)(3). The statutory construction of § 707(b)(2)(D) referencing subsections A through C of § 707(b)(2), but not referencing § 707(b)(3), strongly suggests § 707(b)(2)(D) applies only to the provisions of § 707(b)(2). Cf. *Florida Dep't of Revenue v. Piccadilly Cafeterias, Inc.,* 554 U.S. 33, ——, 128 S.Ct. 2326, 2336, 171 L.Ed.2d 203 (2008) ("The placement of § 1146(a) within a subchapter expressly limited to postconfirmation matters undermines Piccadilly's view that § 1146(a) covers preconfirmation transfers."). Moreover, § 707(b)(3) represents, with certain burdens of proof modified by BAPCPA's changes to § 707(b), a codification of pre-BAPCPA § 707(b), which allowed a dismissal for bad faith or a totality of the debtor's financial condition. *See Behlke v. Eisen (In re Behlke),* 358 F.3d 429 (6th Cir.2004). An ability to pay argument under § 707(b)(3) is not a means test any

more than pre-BAPCPA § 707(b) was a means test.

▪ Reported decisions have consistently rejected the theory that the ability to pay could not be considered under § 707(b)(3)(B) because means testing under § 707(b) already tests ability to pay. A reported decision distinguished between the § 707(b)(2) means test and § 707(b)(3), stating:

> In light of the fact that Congress specifically addressed the situation where a debtor has greater expenses and/or lower income than what is accounted for under the means test calculation, it is unreasonable to interpret § 707(b) as not providing for circumstances where a debtor has fewer expenses and/or higher income than what is set forth under the means test. The plain language of § 707(b)(3) provides for a court to consider that very circumstance. Specifically, in determining whether granting relief would be an abuse of the provisions of Chapter 7 in a case in which the presumption "does not arise or is rebutted," a court is required to consider whether "the totality of the circumstances ... of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(B). The plain meaning of the phrase "debtor's financial situation" must include a debtor's actual income and expenses, since such information is the starting point for any analysis of an individual's financial situation. **There is no provision in § 707(b) stating that the means test is the only method through which a court may determine whether there is abuse based on a debtor's ability to pay.** Rather, the plain language of § 707(b)(3), read in conjunction with § 707(b)(1) and (2), is clear and compels a conclusion that a court must consider a debtor's actual debt-paying ability in ruling on a motion

to dismiss based on abuse where the presumption does not arise or is rebutted.

*Mestemaker*, 359 B.R. at 854–55 (bold added). Thus, it is clear that § 707(b)(3) serves a different purpose and is not a means test.

In addition to the Debtor's argument being inconsistent with BAPCPA's changes to § 707(b), it is also inconsistent with the purpose of the Act to expand the exemption from the § 707(b)(2) means test. As stated in the language of the bill: "A bill to amend title 11, United States Code, to exempt for a limited period, from the application of the means-test presumption of abuse under chapter 7, qualifying members of reserve components of the Armed Forces and members of the National Guard who, after September 11, 2001, are called to active duty or to perform a homeland defense activity for not less than 90 days." The language "means-test presumption of abuse" can only refer to § 707(b)(2) and not § 707(b)(3). Upon introduction of the bill by Senator Durbin of Illinois, the sponsor of the bill (S.3197), the purpose could not have been more transparent:

> Mr. President, when our National Guard and Reserve members return from active duty, the last thing they should have to worry about is struggling to catch up on the bills. Sadly, acute financial challenges are often exactly what greet our bravest men and women when they come home.
>
> For those families who are struggling to make ends meet after serving our country, today I am introducing a bill, the National Guard and Reservists Debt Relief Act, that would give these families a little breathing room. My bill would waive the means test for entering into Chapter 7 bankruptcy protection for National Guard and Reserve members who

have served since September 11, 2001. The bill would give these families a little more time to reorganize their finances so that they can get their lives back in order after serving.

> **The 2005 Bankruptcy Abuse Prevention and Consumer Protection Act changed the U.S. bankruptcy code to make it significantly harder for individuals to receive protection from their creditors via bankruptcy, by requiring filers to pass a means test based on an individual's income and expenses for the 6 month period preceding a bankruptcy filing.**
>
> My bill would exempt returning Guard and Reserve members from this means test, both because our finest men and women deserve greater financial protection and because they are uniquely disadvantaged by the means test criteria. Despite receiving much-deserved active duty pay for their service, National Guard and Reserve members often take a pay cut when they leave their jobs for a deployment. **But because the means test includes the past 6 months of income in its calculation, men and women with little current income may not qualify for bankruptcy protection.**

154 Cong. Rec. S6166 (June 25, 2008). The reference to "past six months of income" is, of course, to BAPCPA's use of "current monthly income" to determine a debtor's income for the Chapter 7 means test. *See* § 101(10 A) (defining current monthly income). This statement explains how current monthly income would create problematic results for certain military personnel returning from active service and the need for the § 707(b)(2)(D) exemption. Current monthly income is irrelevant to the ability to pay standard under § 707(b)(3)(B), which considers a debtor's actual income. This explanation also negates the Debtor's argument that limiting

the § 707(b)(2)(D) exemption to the "means test" of § 707(b)(2) renders it "meaningless."

Although to date, no case law has addressed the Debtor's argument directly, the Supreme Court recently explained "means testing" and its relationship to the debt relief agency provisions of § 526:

> The statutory context supports the conclusion that § 526(a)(4)'s prohibition primarily targets this type of abuse. Code provisions predating the BAPCPA already sought to prevent the practice of loading up on debt prior to filing. Section 523(a)(2), for instance, addressed the attendant risk of manipulation by preventing the discharge of debts obtained by false pretenses and making debts for purchases of luxury goods or services presumptively nondischargeable. See §§ 523(a)(2)(A) and (C) (2000 ed.). The BAPCPA increased the risk of such abuse, however, by providing a new mechanism for determining a debtor's ability to repay. **Pursuant to the "means tes[t]," ... a debtor's petition for Chapter 7 relief is presumed abusive (and may therefore be dismissed or converted to a structured repayment plan under Chapter 13) if the debtor's current monthly income exceeds his statutorily allowed expenses, including payments for secured debt, by more than a prescribed amount. See §§ 707(b)(2)(A)(i)-(iv).** The test promotes debtor accountability but also enhances incentives to incur additional debt prior to filing, as payments on secured debts offset a debtor's monthly income under the formula.

*Milavetz, Gallop & Milavetz, P.A. v. U.S.,* — U.S. —, — – —, 130 S.Ct. 1324, 1336–37, 176 L.Ed.2d 79(2010) (bold added). The Supreme Court also has recently issued decisions that define "means testing", whether in Chapter 7 or Chapter 13, as referring to the formulas enacted by BAPCPA and not pre-BAPCPA bankruptcy law. *Hamilton v. Lanning,* — U.S. —, — n. 8, 130 S.Ct. 2464, 2477 n. 8, 177 L.Ed.2d 23 (2010) ("Petitioner also suggests that some Chapter 13 debtors may be able to plead 'special circumstances' on the expense side of the calculation by virtue of BAPCPA's incorporation of the Chapter 7 means test into Chapter 13. See § 707(b)(2)(B)(i), (ii)."). *Id.* at 2469–70 n. 2 ("The formula for above-median-income debtors is known as the 'means test' and is reflected in a schedule (Form 22C) that a Chapter 13 debtor must file ...").

The Debtor nevertheless asserts that § 707(b)(2)(D) by its plain meaning exempts the Debtor from an ability to pay motion under § 707(b)(3)(B) because § 707(b)(3) looks at whether a debtor has the "means" to pay his creditors. Even ignoring the violence such an interpretation would do to principles of statutory construction and the purpose of the relevant statutory provisions enacted through BAPCPA and the Act, the Debtor's argument ignores the obvious—"means testing" is a term of art in bankruptcy law coming into life only after the enactment of BAPCPA and should be interpreted according to that specialized meaning. "Means testing" in the context of Chapter 7 is meant to be the statutory formula enacted by BAPCPA and codified in § 707(b)(2) and has never been meant to describe the analysis of a debtor's ability to pay under the totality of the circumstances that has been conducted under § 707(b)(3)(B) both prior to and following the enactment of BAPCPA. *See Johnson v. U.S.,* — U.S. —, —, 130 S.Ct. 1265, 1270, 176 L.Ed.2d 1 (2010) (determining whether a statutory term is a term of art must be interpreted in context because "[u]ltimately, context determines meaning[.]").

■ The Debtor has not cited any decisions, reported or otherwise, which have held that a § 707(b)(3) ability to pay motion is a form of "means testing." The Debtor's argument is inconsistent with the plain meaning of § 707(b)(2)(D), the purposes of the 2008 amendment of § 707(b)(2)(D), and BAPCPA. Accordingly, the court determines the exemption provided by § 707(b)(2)(D) is inapplicable to a § 707(b)(3) motion to dismiss, whether or not such a motion is based upon an ability to pay. The court is concurrently entering an order consistent with this decision.

**IT IS SO ORDERED.**