**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN BEVERAGE
ASSOCIATION; CALIFORNIA
RETAILERS ASSOCIATION,
                 *Plaintiffs-Appellants*,

and

CALIFORNIA STATE OUTDOOR
ADVERTISING ASSOCIATION,
                        *Plaintiff*,

v.

CITY AND COUNTY OF SAN
FRANCISCO,
        *Defendant-Appellee.*

No. 16-16072

D.C. No.
3:15-cv-03415-
EMC

| | |
|---|---|
| AMERICAN BEVERAGE ASSOCIATION; CALIFORNIA RETAILERS ASSOCIATION, *Plaintiffs*, | No. 16-16073 |
| and | D.C. No. 3:15-cv-03415-EMC |
| CALIFORNIA STATE OUTDOOR ADVERTISING ASSOCIATION, *Plaintiff-Appellant*, | OPINION |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, *Defendant-Appellee.* | |

Appeal from the United States District Court
for the Northern District of California
Edward M. Chen, District Judge, Presiding

Argued and Submitted April 17, 2017
San Francisco, California

Filed September 19, 2017

Before:  Dorothy W. Nelson and Sandra S. Ikuta, Circuit Judges, and J. Michael Seabright,[*] Chief District Judge.

---

[*] The Honorable J. Michael Seabright, Chief United States District Judge for the District of Hawaii, sitting by designation.

Opinion by Judge Ikuta;
Concurrence by Judge D.W. Nelson

## SUMMARY[**]

### First Amendment / Preliminary Injunction

The panel reversed the district court's denial of the plaintiff Associations' motion for a preliminary injunction, seeking to enjoin the implementation of the City and County of San Francisco's ordinance that would require warnings about the health effects of certain sugar-sweetened beverages on specific types of fixed advertising within San Francisco.

The plaintiffs – the American Beverage Association, the California Retailers Association, and the California State Outdoor Advertising Association – alleged that the ordinance violated their First Amendment right to freedom of speech.

The panel held that the plaintiffs were likely to succeed on the merits of their claim that the ordinance was an "unjustified or unduly burdensome disclosure requirement[] [that] might offend the First Amendment by chilling protected commercial speech." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). Specifically, the panel joined other circuits in holding that the *Zauderer* framework applied beyond the context of preventing consumer deception. The panel held that because the required warning was not purely factual and

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

uncontroversial, San Francisco had not established that the plaintiffs' constitutionally protected interest in not providing the warning was minimal under *Zauderer*. The panel agreed with the plaintiffs that the warning requirements – a black box warning that overwhelmed other visual elements of the ads – unduly burdened and chilled protected speech.

The panel held that the remaining preliminary injunction factors also weighed in the plaintiffs' favor. The panel concluded that the district court abused its discretion in denying the plaintiffs' motion for a preliminary injunction, and reversed and remanded.

Judge Nelson concurred in the judgment because she believed that the ordinance, in its current form, likely violated the First Amendment by mandating a warning requirement so large that it would probably chill protected commercial speech. Judge Nelson would reverse and remand without also making the conclusion that the warning's language was controversial and misleading.

---

## COUNSEL

Richard P. Bress (argued), Melissa Arbus Sherry, and Michael E. Bern, Latham & Watkins LLP, Washington, D.C.; James K. Lynch and Marcy C. Priedeman, Latham & Watkins LLP, San Francisco, California; for Plaintiff-Appellant American Beverage Association.

Thomas S. Knox, Knox Lemmon & Anappolsky LLP, Sacramento, California; for Plaintiff-Appellant California Retailers Association.

Theodore B. Olson, Andrew S. Tulumello, and Helgi C. Walker, Gibson Dunn & Crutcher LLP, Washington, D.C.; Charles J. Stevens and Joshua D. Dick, Gibson Dunn & Crutcher LLP, San Francisco, California; for Plaintiff-Appellant California State Outdoor Advertising Association.

Christine Van Aken (argued), Jeremy M. Goldman, and Wayne Snodgrass, Deputy City Attorneys; Dennis J. Herrera, City Attorney; Office of the City Attorney, San Francisco, California; for Defendant-Appellee.

## OPINION

IKUTA, Circuit Judge:

American Beverage Association, California Retailers Association, and the California State Outdoor Advertising Association (we refer to these organizations and their members collectively as "the Associations"), filed suit against the City and County of San Francisco challenging a city ordinance that would require warnings about the health effects of certain sugar-sweetened beverages on specific types of fixed advertising within San Francisco. The Associations argue that the ordinance violates their First Amendment right to freedom of speech. After the district court denied the Associations' motion for a preliminary injunction, the Associations filed this interlocutory appeal. We conclude that the Associations are likely to succeed on the merits of their claim that the ordinance is an "unjustified or unduly burdensome disclosure requirement[] [that] might offend the First Amendment by chilling protected commercial speech." *Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). The remaining

preliminary injunction factors also weigh in the Associations' favor.  We hold that the district court abused its discretion in denying the Associations' motion for a preliminary injunction, and we reverse and remand.

I

San Francisco enacted an ordinance in June 2015 requiring advertisers who post advertisements for sugar-sweetened beverages within San Francisco to include the following statement:

> WARNING: Drinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay.  This is a message from the City and County of San Francisco.

S.F. Health Code § 4203(a).  The ordinance applies to a certain type of advertisement for sugar-sweetened beverages, termed an "SSB Ad."  *Id*.  As defined, an "SSB Ad" includes any advertisement or logo that "identifies, promotes, or markets a Sugar-Sweetened Beverage for sale or use" that is posted on billboards, structures, or vehicles, among other things.  *Id.* § 4202.[1]  The term "Sugar-Sweetened Beverage"

---

[1] Section 4202 provides in relevant part:

> "SSB Ad" means any advertisement, including, without limitation, any logo, that identifies, promotes, or markets a Sugar-Sweetened Beverage for sale or use that is any of the following: (a) on paper, poster, or a billboard;· (b) in or on a stadium, arena, transit shelter, or any other structure;· (c) in or on a bus, car, train, pedicab, or any other vehicle; or (d) on a wall, or any other surface or material.

is defined to include soda and other non-alcoholic beverages that contain one or more added sweeteners and more than twenty-five calories per twelve fluid ounces of beverage.[2]  *Id.* The ordinance provides detailed instructions regarding the form, content, and placement of the warning on SSB Ads, including the requirement that it occupy 20 percent of the advertisement and be set off with a rectangular border.  *Id.* § 4203.  Failure to comply with the ordinance's warning requirement results in administrative penalties imposed by San Francisco's Director of Health.  *Id.* § 4204.  According to the ordinance, San Francisco's purpose in requiring the warning for certain sugar-sweetened beverages is, among other things, to "inform the public of the presence of added sugars and thus promote informed consumer choice that may result in reduced caloric intake and improved diet and health, thereby reducing illnesses to which [sugar-sweetened

---

S.F. Health Code § 4202.  This section also provides that "SSB Ad" does not include advertising in periodicals, television, electronic media, SSB containers or packaging, menus, shelf tags, vehicles, or logos that occupy an area less than thirty-six square inches, among other things.  *Id*.

[2] Section 4202 provides in relevant part:

> "Sugar Sweetened Beverage" means any Nonalcoholic Beverage sold for human consumption, including, without limitation, beverages produced from Concentrate, that has one or more added Caloric Sweeteners and contains more than 25 calories per 12 ounces of beverage.

S.F. Health Code § 4202.  The definition also provides that "Sugar Sweetened Beverage" does not include Milk, Milk alternatives primarily consisting of plant-based ingredients, 100% Natural Fruit Juice, Natural Vegetable Juice, infant formula, Medical Food, supplements, and certain other products.  Each of the capitalized terms is defined separately in the ordinance.

beverages] contribute and associated economic burdens." *Id.* § 4201.

The Associations sued San Francisco in July 2015, seeking injunctive relief to prevent the implementation of the ordinance, which was set to go into effect on July 25, 2016. S.F. Health Code § 4203(a). The district court denied the Associations' motion for a preliminary injunction in May 2016. In concluding that the Associations were not likely to succeed on the merits of their First Amendment challenge, the district court held that the warning was not misleading, would not place an undue burden on the Associations' commercial speech, and was rationally related to a government interest. Nevertheless, the court granted the Associations' motion for an injunction pending appeal. The Associations filed a timely interlocutory appeal.

## II

We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). We review the district court's denial of a preliminary injunction for an abuse of discretion. *Inst. of Cetacean Research v. Sea Shepherd Conservation Soc.*, 725 F.3d 940, 944 (9th Cir. 2013). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence." *Id.* (citation and internal quotation marks omitted). When we consider First Amendment claims, "[h]istorical questions of fact (such as credibility determinations or ordinary weighing of conflicting evidence) are reviewed for clear error, while constitutional questions of fact (such as whether certain restrictions create a severe burden on an individual's First Amendment rights) are reviewed *de novo*." *Prete v. Bradbury*, 438 F.3d 949, 960

(9th Cir. 2006) (internal quotation marks omitted).  This "requirement of independent appellate review . . . is a rule of federal constitutional law, which does not limit our deference to a trial court on matters of witness credibility, but which generally requires us to review the finding of facts by a [trial court] . . . where a conclusion of law as to a Federal right and a finding of fact are so intermingled as to make it necessary, in order to pass upon the Federal question, to analyze the facts."  *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Boston*, 515 U.S. 557, 567 (1995) (citations and internal quotation marks omitted).  "This obligation rests upon us simply because the reaches of the First Amendment are ultimately defined by the facts it is held to embrace, and we must thus decide for ourselves whether a given course of conduct falls on the near or far side of the line of constitutional protection."  *Id.*  Because the questions whether a compelled disclosure is purely factual and uncontroversial and whether it unduly burdens commercial speech are "so intermingled" with the conclusion of law as to whether a commercial speaker's First Amendment rights are violated, these are constitutional questions of fact that we review de novo.  *See id.*; *cf. Peel v. Attorney Registration & Disciplinary Comm'n*, 496 U.S. 91, 108 (1990) ("Whether the inherent character of a statement places it beyond the protection of the First Amendment is a question of law over which Members of this Court should exercise *de novo* review.").

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).  "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable

harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20.

The "burdens at the preliminary injunction stage track the burdens at trial." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429 (2006); *see also Ashcroft v. Am. Civil Liberties Union*, 542 U.S. 656, 666 (2004). At trial, San Francisco would carry the burden "of demonstrating the legitimacy of its commercial-speech regulations," and of showing that its regulation "directly and proportionally" addresses San Francisco's interest. *Zauderer*, 471 U.S. at 658–59; *see also Ibanez v. Fla. Dep't of Bus. & Prof'l Regulation*, 512 U.S. 136, 142 n.7 (1994) ("It is well established that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it." (citations and internal quotation marks omitted)). Therefore, at the preliminary injunction stage, once the Associations have demonstrated that the ordinance burdens protected speech, they "must be deemed likely to prevail" unless San Francisco demonstrates that the requirements imposed by the ordinance pass constitutional muster. *Ashcroft*, 542 U.S. at 666.

III

With these principles in mind, we turn to our review of the district court's order denying the Associations' motion for a preliminary injunction. At the first step of the preliminary injunction analysis, we consider the Associations' likelihood of success on the merits of their First Amendment challenge.

A

We begin by setting forth the legal framework applicable to the Associations' First Amendment challenge. The First Amendment provides that "Congress shall make no law . . . abridging the freedom of speech."[3] U.S. Const. amend. I. Even commercial speech, defined as "expression related solely to the economic interests of the speaker and its audience," enjoys some First Amendment protection. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980); *see also Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 772 (1976). In reaching this conclusion, the Supreme Court reasoned that "even if the First Amendment were thought to be primarily an instrument to enlighten public decisionmaking in a democracy," the free flow of commercial information serves that end because it is indispensable to ensuring that economic decisions "in the aggregate, be intelligent and well informed." *Va. State Bd. of Pharmacy*, 425 U.S. at 765; *see also Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 366 (2002). Indeed, a "consumer's concern for the free flow of commercial speech often may be far keener than his concern for urgent political dialogue." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 566 (2011) (internal quotation marks omitted).

Because "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides," *Zauderer*, 471 U.S. at 651, and the government has a

---

[3] The First Amendment is incorporated against the states via the Due Process Clause of the Fourteenth Amendment. *See Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 749 n.1 (1976).

"legitimate interest in protecting consumers from commercial harms," commercial speech "can be subject to greater governmental regulation than noncommercial speech," *Sorrell*, 564 U.S. at 579; *see also City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 426 (1993). While content-based regulations of noncommercial speech are subject to strict scrutiny, *see, e.g.*, *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015), regulations of commercial speech are subject to lesser review.

The level of scrutiny for burdens placed on commercial speech depends on the nature of the regulation at issue. In *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, the Supreme Court established a standard of review for restrictions that limit commercial speech. 447 U.S. at 566. Such restrictions "on nonmisleading commercial speech regarding lawful activity must withstand intermediate scrutiny—that is, they must 'directly advanc[e]' a substantial governmental interest and be 'n[o] more extensive than is necessary to serve that interest.'" *Milavetz, Gallop & Milavetz, P.A. v. United States*, 559 U.S. 229, 249 (2010) (quoting *Central Hudson*, 447 U.S. at 566). By contrast, regulations that "impose a disclosure requirement rather than an affirmative limitation on speech" are governed by the lesser standard set forth in *Zauderer*. *Id.*

In *Zauderer*, the Supreme Court considered the constitutionality of an Ohio State Bar rule requiring "that any advertisement that mentions contingent-fee rates must . . . inform clients that they would be liable for costs (as opposed to legal fees) even if their claims were unsuccessful." 471 U.S. at 633 (internal quotation marks omitted). An attorney was disciplined under this rule for publishing an

advertisement stating that "cases are handled on a contingent fee basis of the amount recovered. If there is no recovery, no legal fees are owed by our clients." 471 U.S. at 631. In assessing the attorney's constitutional challenge to this rule, the Court first determined that the intermediate scrutiny standard developed in *Central Hudson* was not applicable, because "disclosure requirements trench much more narrowly on an advertiser's interests than do flat prohibitions on speech." *Id.* at 651; *see also id.* at 651 n.14 (noting that "the First Amendment interests implicated by disclosure requirements are substantially weaker than those at stake when speech is actually suppressed"). The disciplinary rule required only the inclusion of "purely factual and uncontroversial information about the terms under which [the attorney's] services will be available," and therefore the attorney's "constitutionally protected interest in *not* providing any particular factual information in his advertising is minimal." *Id.* at 651 (emphasis in original). Despite the lesser First Amendment interest in compelled commercial speech, the Court recognized that "unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech." *Id.* Nevertheless, disclosure requirements that are "reasonably related to the State's interest in preventing deception of consumers" generally do not offend a commercial speaker's First Amendment rights. *Id.*

Applying this framework, the Court upheld the disciplinary rule, reasoning that the required disclosures were "purely factual and uncontroversial," and were not unduly burdensome. *Id.* at 651 & 653 n.15. Although the attorney's advertisement was not technically false—it accurately stated that clients would not be responsible for legal fees if there was no recovery—the Court concluded that it would mislead

"substantial numbers of potential clients," and that the disclosure requirements were "reasonably related to the State's interest in preventing deception of consumers." *Id.* at 651–52.

Subsequent Supreme Court cases have applied *Zauderer*'s analytic framework only to government-mandated disclosures aimed at preventing consumer deception. *See, e.g.*, *Milavetz, Gallop & Milavetz*, 559 U.S. at 249. The Supreme Court has not yet considered whether the *Zauderer* framework applies when a state requires disclosures for a different state interest, such as to promote public health. Nevertheless, the Supreme Court's reasoning in *Zauderer* "seems inherently applicable beyond the problem of deception, as other circuits have found." *Am. Meat Inst. v. U.S. Dep't of Agric.*, 760 F.3d 18, 22 (D.C. Cir. 2014). *Zauderer* observed that "the extension of First Amendment protection to commercial speech is justified principally by the value to consumers of the information such speech provides." 471 U.S. at 651. Accordingly, a commercial speaker's constitutionally protected interest in refraining from providing consumers with additional information is minimal if a required disclosure is "purely factual and uncontroversial" and is not "unjustified or unduly burdensome" so as to chill protected speech. *Id*. These principles seem applicable to evaluating the constitutionality of compelled disclosures regardless of the government's purpose. Therefore, *Zauderer*'s conclusion that "an advertiser's rights are adequately protected as long as disclosure requirements are reasonably related to the State's interest in preventing deception of consumers," *id.* at 651, is best read as a specific application of *Zauderer*'s more general rule that a purely factual and uncontroversial disclosure that is not unduly burdensome will withstand First Amendment scrutiny so long as it is reasonably related to a

substantial government interest.[4]   Accordingly, we have joined our sister circuits in holding that the *Zauderer* framework applies beyond the context of preventing consumer deception. *See CTIA-The Wireless Ass'n v. City of Berkeley*, 854 F.3d 1105, 1117 (9th Cir. 2017); *see also Am. Meat Inst.*, 760 F.3d at 22; *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 554–55 (6th Cir. 2012); *N.Y. State Rest. Ass'n v. N.Y. City Bd. of Health*, 556 F.3d 114, 132 (2d Cir. 2009); *Pharm. Care Mgmt. Ass'n v. Rowe*, 429 F.3d 294, 310 (1st Cir. 2005).

Applying the *Zauderer* framework, we first consider whether there is any controversy regarding the factual accuracy of the disclosure. *CTIA-The Wireless Ass'n*, 854 F.3d at 1117–18.[5]   This is a key inquiry, because *Zauderer* justified the lower standard of scrutiny based on its conclusion that an advertiser's First Amendment interest in not providing "purely factual and uncontroversial information" was low. *Zauderer*, 471 U.S. at 651. Therefore, a required disclosure cannot be upheld under the *Zauderer*

---

[4] We also recognize that "[i]nnumerable federal and state regulatory programs require the disclosure of product and other commercial information," *Nat'l Elec. Mfrs. Ass'n v. Sorrell*, 272 F.3d 104, 116 (2d Cir. 2001), including requirements for tobacco labeling, nutritional labeling, disclosures in prescription drug advertising, and reporting of releases of toxic substances, none of which are aimed directly at preventing consumer deception. *Id.* To hold that the *Zauderer* framework applies only when the state interest is in preventing consumer deception "would expose these long-established programs to searching scrutiny by unelected courts." *Id.*

[5] As we have clarified, the term "uncontroversial" in this context "refers to the factual accuracy of the compelled disclosure, not to its subjective impact on the audience." *CTIA-The Wireless Ass'n*, 854 F.3d at 1117.

framework if the disclosure is not purely factual and uncontroversial. *CTIA-The Wireless Ass'n*, 854 F.3d at 1117–18; *see also Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 953 (9th Cir. 2009), *aff'd sub nom. Brown v. Entm't Merchants Ass'n*, 564 U.S. 786 (2011) (holding that a state's "labeling requirement is unconstitutionally compelled speech under the First Amendment because it does not require the disclosure of purely factual information; but compels the carrying of the State's controversial opinion"). Generally, a disclosure requirement is purely factual and uncontroversial under *Zauderer* so long as it "provide[s] accurate factual information to the consumer." *CTIA-The Wireless Ass'n*, 854 F.3d at 1118. However, if a compelled disclosure is "literally true but nonetheless misleading and, in that sense, untrue," then it is not purely factual under *Zauderer*. *Id.* at 1119. *Zauderer* illustrates this point. In *Zauderer*, the attorney advertisement at issue was literally true; everything included in the advertisement was factual. Nonetheless, the Supreme Court concluded that the "possibility of deception" from the technically truthful advertisement was "self-evident" because it omitted key information about the meaning of the terms "legal fees" and "costs." 471 U.S. at 652–53. Applying this principle to disclosure requirements, a literally true but misleading disclosure creates the possibility of consumer deception. A disclosure that may deceive consumers does not further the free flow of accurate information or add to the "value to consumers of the information [commercial] speech provides." *Id.* at 651; *see also Am. Meat Inst.*, 760 F.3d at 22 (stating that a required disclosure "could be so one-sided or incomplete that [it] would not qualify as 'factual and uncontroversial'" under *Zauderer*).

We must also determine whether the compelled disclosure is an "unjustified or unduly burdensome" regulation that may chill protected commercial speech. *Zauderer*, 471 U.S. at 651*; see also Ibanez*, 512 U.S. at 146–47.[6]   A required disclosure may be unduly burdensome if it "effectively rules out" advertising in particular media. *Ibanez*, 512 U.S. at 146. In *Ibanez*, for instance, the Supreme Court considered a Florida Board of Accountancy rule prohibiting the "use of any 'specialist' designation unless accompanied by a [detailed and lengthy] disclaimer, made 'in the immediate proximity of the statement that implies formal recognition as a specialist.'" *Id.* at 146.   The Board had disciplined an attorney who had placed "Certified Public Accountant" and "Certified Financial Planner" next to her name in her yellow pages listing and on her business cards and law office stationery. *Id.* at 138.   The Court concluded that under those facts, and given "the failure of the Board to point to any harm that is potentially real, not purely hypothetical," the rule was both unjustified and unduly burdensome. *Id.* at 146.   The Court reasoned that "[t]he detail required in the disclaimer currently described by the Board effectively rules out notation of the 'specialist' designation on a business card or letterhead, or in a yellow pages listing." *Id.* at 146–47.

A number of our sister circuits have recognized that "*Zauderer* cannot justify a disclosure so burdensome that it essentially operates as a restriction on constitutionally

---

[6] This issue did not arise in *CTIA-The Wireless Association* because in that case the ordinance at issue required a retailer to provide specified information to cell phone purchasers at the point of sale.  854 F.3d at 1110.  Because the disclosure requirement was triggered by a sale, not by an advertiser's speech, the requirement did not burden or chill any protected speech.

protected speech . . . [n]or can it sustain mandates that chill protected commercial speech." *Am. Meat Inst.*, 760 F.3d at 27 (citations and internal quotation marks omitted). In *Dwyer v. Cappell*, for example, the Third Circuit considered the constitutionality of a New Jersey Bar Committee requirement that attorneys who chose to quote a judicial opinion in their advertising also include the full-length opinion. 762 F.3d 275, 283–85 (3d Cir. 2014). The Third Circuit concluded that the disclosure requirement was unduly burdensome because it "necessarily prevent[ed] any form of advertisement with simply a judicial excerpt," and made advertising in most mediums unrealistic. *Id.* at 284. As such, the restriction infringed on the attorney's First Amendment rights. *Id.*[7] Similarly, in *Public Citizen Inc. v. Louisiana Attorney Disciplinary Board*, the Fifth Circuit held that a Louisiana State Bar Association rule dictating the font size and speed of speech attorneys must use in written and spoken disclaimers in advertisements was unduly burdensome because it "effectively rule[d] out the ability of Louisiana lawyers to employ short advertisements of any kind." 632 F.3d 212, 229 (5th Cir. 2011); *see also Tillman v. Miller*, 133 F.3d 1402, 1404 n.4 (11th Cir. 1998) (concluding that a requirement that plaintiff devote five seconds of his thirty second television ad to a disclosure imposed an undue burden on plaintiff's commercial speech).

---

[7] The Third Circuit noted that the onerous nature of the disclosure requirement indicated that its purpose was "to make it so burdensome to quote judicial opinions that attorneys will cease doing so." 762 F.3d at 284. For this reason, the requirement was effectively a restriction rather than a disclosure, and would be subject to the higher level of scrutiny set forth in *Central Hudson*. *Id.* Because the restriction failed under the lesser *Zauderer* standard, it would necessarily fail under intermediate scrutiny. *Id.*

A disclosure requirement may also be unduly burdensome and chill commercial speech if the disclosure promotes policies or views that are one-sided or "are biased against or are expressly contrary to the corporation's views." *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n*, 475 U.S. 1, 15 n.12 (1986) (plurality opinion). A compelled disclosure that requires speakers "to use their own property to convey an antagonistic ideological message," or "to respond to a hostile message when they 'would prefer to remain silent,'" or "to be publicly identified or associated with another's message," cannot withstand First Amendment scrutiny. *Glickman v. Wileman Bros. & Elliott*, 521 U.S. 457, 471 (1997) (citations omitted).

If the required disclosure is not factually inaccurate or unduly burdensome, then it will pass constitutional muster so long as it is reasonably related to a government interest of sufficient weight. *Zauderer*, 471 U.S. at 651. Like other circuits, we have concluded that the government must identify a "substantial—that is, more than trivial—governmental interest," such as "protecting the health and safety of consumers." *CTIA-The Wireless Ass'n*, 854 F.3d at 1117–18 (quoting *NEMA*, 272 F.3d at 115 n.6). Further, the government must demonstrate that there is a "rational relationship" between the disclosure requirement and the government interest. *See Video Software Dealers Ass'n*, 556 F.3d at 967. In the context of commercial speech, this means that the required disclosure "must relate to the good or service offered by the regulated party." *Am. Meat Inst.*, 760 F.3d at 26; *see also NEMA*, 272 F.3d at 115 (holding that there must be a "rational connection between the purpose of a commercial disclosure requirement and the means employed to realize that purpose").

The government must carry the burden of demonstrating that its disclosure requirement is purely factual and uncontroversial, not unduly burdensome, and reasonably related to a substantial government interest. *See Zauderer*, 471 U.S. at 658–59; *Ibanez*, 512 U.S. at 146.

B

Because San Francisco's ordinance imposes a disclosure requirement on commercial speech, we first consider whether the "inherent character," *Peel*, 496 U.S. at 108, of the compelled disclosure is "purely factual and uncontroversial" under *Zauderer* such that it imposes a lesser burden on commercial speech. *Zauderer*, 471 U.S. at 651; *see also CTIA-The Wireless Ass'n*, 854 F.3d at 1118. Because this is a constitutional question of fact, we review this issue de novo. *See Prete*, 438 F.3d at 960; *see also Hurley*, 515 U.S. at 567.

We conclude that the factual accuracy of the warning is, at a minimum, controversial as that term is used in the *Zauderer* framework. The warning provides the unqualified statement that "[d]rinking beverages with added sugar(s) contributes to obesity, diabetes, and tooth decay," S.F. Health Code § 4203(a), and therefore conveys the message that sugar-sweetened beverages contribute to these health conditions regardless of the quantity consumed or other lifestyle choices. This is contrary to statements by the FDA that added sugars are "generally recognized as safe," 21 C.F.R. § 184.1866, and "can be a part of a healthy dietary pattern when not consumed in excess amounts," 81 Fed. Reg. 33,742, 33,760 (May 27, 2016). Although San Francisco's experts state that "there is a clear scientific consensus" that sugar-sweetened beverages contribute to obesity and diabetes through "excessive caloric intake" and "by adding extra

calories to the diet," the experts do not directly challenge the conclusion of the Associations' expert that "when consumed as part of a diet that balances caloric intake with energy output, consuming beverages with added sugar does not contribute to obesity or diabetes." Because San Francisco's warning does not state that *overconsumption* of sugar-sweetened beverages contributes to obesity, diabetes, and tooth decay, or that consumption of sugar-sweetened beverages *may* contribute to obesity, diabetes, and tooth decay, the accuracy of the warning is in reasonable dispute.

Moreover, the warning is "misleading and, in that sense, untrue." *CTIA-The Wireless Ass'n*, 854 F.3d at 1119. The warning is required exclusively on advertisements for sugar-sweetened beverages, and not on advertisements for other products with equal or greater amounts of added sugars and calories. By focusing on a single product, the warning conveys the message that sugar-sweetened beverages are less healthy than other sources of added sugars and calories and are more likely to contribute to obesity, diabetes, and tooth decay than other foods.[8] This message is deceptive in light of the current state of research on this issue. According to the FDA, "added sugars, including sugar-sweetened beverages, are no more likely to cause weight gain in adults than any other source of energy." 79 Fed. Reg. 11880, 11904 (Mar. 3, 2014). The American Dental Association has similarly cautioned against the "growing popularity of singling-out sugar-sweetened beverages" because " the evidence is not yet

---

[8] The Associations provide a pertinent example. If car dealers were required to post a warning only on Toyota vehicles that said: "WARNING: Toyotas contribute to roll-over crashes," the common-sense conclusion would be that Toyotas are more likely to cause rollovers than other vehicles.

sufficient to single out any one food or beverage product as a key driver of dental caries." American Dental Association, Technical Comments of the American Dental Association on the Scientific Advisory Report of the 2015 Dietary Guidelines Advisory Committee at 6 (May 8, 2015). Acknowledging that there is still debate over whether sugar-sweetened beverages pose unique health risks, San Francisco also argues that sugar-sweetened beverages uniquely contribute to obesity, diabetes, and tooth decay because people are more likely to over-consume sugar-sweetened beverages than other foods. But even if it were undisputed that consumption of sugar-sweetened beverages gives rise to unique behavioral risks, the warning does not communicate that information. Rather, the warning singles out sugar-sweetened beverages without mentioning behavioral risks, and thus clearly implies that there is something inherent about sugar-sweetened beverages that contributes to these health risks in a way that other sugar-sweetened products do not, regardless of consumer behavior.[9] Therefore, the district court erred in concluding that it would be unreasonable to interpret the warning to mean that sugar-sweetened beverages are uniquely or inherently unhealthy. Because the warning is not purely factual and uncontroversial, we conclude that San Francisco has not established that the Associations' constitutionally protected interest in not providing the warning is minimal under *Zauderer*, 471 U.S. at 165.

---

[9] San Francisco argues that even if its warning is under-inclusive because it singles out only sugar-sweetened beverages, it is entitled "to attack problems piecemeal." *Zauderer*, 471 U.S. at 651 n.14. This argument misapprehends *Zauderer*. San Francisco's warning requirement here is problematic because it is potentially misleading, not because it "does not get at all facets of the problem it is designed to ameliorate." *Id*.

In short, rather than being "purely factual and uncontroversial," the warning requires the Associations to convey San Francisco's disputed policy views. While the government "has substantial leeway in determining appropriate information disclosure requirements for business corporations," *Pacific Gas & Electric Co.*, 475 U.S. at 15 n.12, *Zauderer* does not allow the state to require corporations to provide one-sided or misleading messages, *cf. id.*, or "to use their own property to convey an antagonistic ideological message," *Glickman*, 521 U.S. at 471 (*citing Wooley v. Maynard*, 430 U.S. 705 (1977)).

We next turn to the question whether San Francisco's ordinance imposes an undue burden that may chill protected speech. *Zauderer*, 471 U.S. at 651; *Ibanez*, 512 U.S. at 146. We review this issue de novo. *Prete*, 438 F.3d at 960.

The Associations argue that the warning unduly burdens their protected commercial speech because a warning that satisfies the ordinance—a black box, bold warning that covers 20 percent of their advertisements—effectively takes over their message.[10] Moreover, the Associations argue that the ordinance forces them to carry San Francisco's message about the health effects of sugar-sweetened beverages, which the Associations claim is misleading and one-sided. Accordingly, the Associations argue that the ordinance chills their protected speech because it renders their speech on covered media so ineffective as to make it impractical to advertise on covered media.

---

[10] The Associations' sample advertisements containing the warnings in the form required by the ordinance are set forth in Appendix A.

We agree with the Associations that the warning requirement in this case unduly burdens and chills protected commercial speech.  As the sample advertisements show, the black box warning overwhelms other visual elements in the advertisement.  As such, it is analogous to other requirements that courts have struck down as imposing an undue burden on commercial speech, such as laws requiring advertisers to provide a detailed disclosure in every advertisement, *Ibanez*, 512 U.S. at 146, to use a font size "that is so large that an advertisement can no longer convey its message," *Public Citizen Inc.*, 632 F.3d at 228, or to devote one-sixth of the broadcast time of a television advertisement to the government's message, *Tillman*, 133 F.3d at 1404 n.4.

The district court recognized that the burden imposed by the warning requirement was substantial, but concluded that it was not unduly burdensome.  It noted that a commercial speaker could use the remaining 80 percent of its advertising space to engage in counter-speech.  In reaching this conclusion, the court failed to recognize that forcing a speaker "to tailor its speech to an opponent's agenda," and to respond to a one-sided and misleading message when it would "prefer to be silent," *Pacific Gas & Electric Co.*, 475 U.S. at 10–11, burdens the First Amendment right to be silent, a right which "serves the same ultimate end as freedom of speech in its affirmative aspect," *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 559 (1985).  Moreover, even though advertisers would be free to engage in counter-speech, countering San Francisco's misleading message would leave them little room to communicate their intended message.  This would defeat the purpose of the advertisement, turning it into a vehicle for a debate about the health effects of sugar-sweetened beverages.

Because the ordinance is not purely factual and uncontroversial and is unduly burdensome, it offends the Associations' First Amendment rights by chilling protected commercial speech. Indeed, the Associations submitted unrefuted declarations from major companies manufacturing sugar-sweetened beverages stating that they will remove advertising from covered media if San Francisco's ordinance goes into effect. This evidence supports the Associations' position that the disclosure requirement is unduly burdensome because it effectively rules out advertising in a particular medium, *see Ibanez*, 512 U.S. at 146, and will cause advertisers to cease using that medium to speak, *see Dwyer*, 762 F.3d 283–85. The district court erred in rejecting this evidence on the ground that the Associations' declarations were "self-serving." "[D]eclarations are often self-serving, and this is properly so because the party submitting it would use the declaration to support his or her position." *Nigro v. Sears, Roebuck & Co.*, 784 F.3d 495, 497 (9th Cir. 2015). A district court cannot disregard an affidavit "solely based on its self-serving nature." *Id.*[11]

---

[11] In determining that the Associations' declarations were not credible, the district court reasoned that tobacco and pharmaceutical companies continued to advertise despite being compelled to provide similar warnings. We do not find this reasoning persuasive. Sugar-sweetened beverages do not have the same physiologically addictive qualities as tobacco, nor are they prescribed by doctors to treat health conditions like pharmaceutical products. There is no evidence in the record that advertisers have continued advertising products analogous to sugar-sweetened beverages in the face of compelled disclosures of the sort required here.

Although there is no dispute that San Francisco has a substantial government interest in the health of its citizens,[12] *see CTIA-The Wireless Ass'n*, 854 F.3d at 1118, San Francisco has not carried its burden "of demonstrating the legitimacy of its commercial-speech regulations," *Zauderer*, 471 U.S. at 659, because of substantial evidence in the record that the regulation is misleading and would chill the Associations' protected commercial speech.[13] We conclude that the Associations have shown a likelihood of success on the merits of their First Amendment claim. The district court's conclusion to the contrary was based on legal errors and was accordingly an abuse of discretion.

IV

We now turn to the remaining steps of the preliminary injunction test. At the second step of the preliminary injunction test, we consider whether Associations have demonstrated that they are "likely to suffer irreparable harm

---

[12] It is less clear, however, whether San Francisco can establish that providing misleading information through an unduly burdensome disclosure is reasonably related to its substantial interest in the health of its citizens. Indeed, San Francisco "has no legitimate reason to force retailers to affix false information on their products." *Video Software Dealers Ass'n*, 556 F.3d at 967.

[13] Because we conclude that the ordinance fails "under the less stringent *Zauderer* standard," because it is not purely factual and uncontroversial and unduly burdens protected speech, it necessarily follows that the ordinance would also fail under *Central Hudson*. *See Dwyer*, 762 F.3d at 284; *see also Video Software Dealers Ass'n*, 556 F.3d at 966 (holding that the court need not decide whether a heightened level of scrutiny applies because the required disclosure was not purely factual and uncontroversial and therefore "fails even under the factual information and deception prevention standards set forth in *Zauderer*").

in the absence of preliminary relief." *Winter*, 555 U.S. at 22. The Supreme Court has made clear that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Accordingly, "[a] colorable First Amendment claim is irreparable injury sufficient to merit the grant of relief." *Doe v. Harris*, 772 F.3d 563, 583 (9th Cir. 2014) (internal quotation marks omitted). Because the Associations have made a colorable First Amendment claim, they have demonstrated a likelihood of suffering irreparable harm if the ordinance is allowed to go into effect.

At the third step of the preliminary injunction test, we consider the balance of hardships. *Winter*, 555 U.S. at 22. Once again, our conclusion at this step is dictated by the Associations' likelihood of success on their First Amendment claim. "The fact that the [Associations] have raised serious First Amendment questions compels a finding that . . . the balance of hardships tips sharply in [the Associations'] favor." *Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1059 (9th Cir. 2007).

Finally, we must consider whether an injunction is in the public interest. *Winter*, 555 U.S. at 22. We have "consistently recognized the significant public interest in upholding First Amendment principles." *Doe*, 772 F.3d at 583 (internal quotation marks omitted). Indeed, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (internal quotation marks omitted). Accordingly, a preliminary injunction is in the public interest here.

Because the Associations have met each of the requirements for a preliminary injunction, we conclude that the district court abused its discretion in denying the Associations' motion for a preliminary injunction.

**REVERSED AND REMANDED.**

NELSON, Senior Circuit Judge, concurring in judgment:

I concur in the judgment of this case because I believe that the ordinance, in its current form, likely violates the First Amendment by mandating a warning requirement so large that it will probably chill protected commercial speech. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985) ("We recognize that unjustified or unduly burdensome disclosure requirements might offend the First Amendment by chilling protected commercial speech."). While I do not understand the majority's opinion to state that no properly worded warning would pass constitutional muster, I agree that the City has not carried its burden in demonstrating that the twenty percent requirement at issue here would not deter certain entities from advertising in their medium of choice. Because this case can be disposed of on this question alone, I would reverse and remand without making the tenuous conclusion that the warning's language is controversial and misleading.

**APPENDIX A**





